UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JENNIFER G.,

      **Plaintiff,**

   v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

Case No. 2:20-cv-7311
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Jennifer G. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.     PROCEDURAL HISTORY**

    On June 9, 2016, Plaintiff filed her application for benefits, alleging that she has been disabled since January 24, 2016. R. 153, 171, 249−50. The application was denied initially and

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

upon reconsideration. R. 172–77, 181–83. Plaintiff requested a *de novo* hearing before an administrative law judge. R. 184–85. Administrative Law Judge ("ALJ") Scott Tirrell held a hearing on September 6, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 37–110. In a decision dated April 25, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 24, 2016, Plaintiff's alleged disability onset date, through the date of that decision. R. 19–31. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 12, 2020. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On January 25, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[2] On January 26, 2021, the case was reassigned to the undersigned. ECF No. 11. The matter is now ripe for disposition.

## II.  LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

> record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

B. **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.  ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 43 years old on her alleged disability onset date. R. 30. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. R. 21. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between January 24, 2016, her alleged disability onset date, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: post-traumatic stress disorder ("PTSD"); anxiety; depression; borderline intellectual functioning; and schizoaffective disorder. *Id*. The ALJ also found that Plaintiff's diagnosed hypothyroidism, Lyme disease, and chronic fatigue syndrome and alleged of fibromyalgia were not severe impairments. R. 21–22.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 22–23.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to various non-exertional limitations. R. 23–30. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a licensed practical nurse. R. 29–30.

At step five, the ALJ found that a significant number of jobs–*i.e.*, approximately 46,563 jobs as a document preparer; approximately 7,844 jobs as an addresser; and approximately 5,100 jobs as a tube station attendant–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 30–31. The ALJ therefore concluded

that Plaintiff was not disabled within the meaning of the Social Security Act from January 24, 2016, her alleged disability onset date, through the date of the decision. R. 31.

Plaintiff disagrees with the ALJ's findings at steps two, three, and four and asks that the decision be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 18; *Plaintiff's Reply Brief*, ECF No. 24. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 21.

## IV.   DISCUSSION

Plaintiff argues, *inter alia*, that substantial evidence does not support the ALJ's mental RFC determination. *Plaintiff's Brief*, ECF No. 18, pp. 30−33; *Plaintiff's Reply Brief*, ECF No. 24, p. 7. This Court agrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence,

8

but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with certain non-exertional limitations, as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can sustain attention and concentration over an 8 hour workday, with customary breaks, on simple, routine tasks; and could use judgment in making work-related decisions commensurate with this same type of work. The claimant would be able to adapt to changes in routine work setting. She would be unable to work at production rate pace, such as with assembly line work. Further, *the claimant could have occasional interaction with coworkers and supervisors, beyond any increased interactions initially required to learn the job, but would be unable to work in tandem with coworkers to complete job tasks. Lastly, the claimant could have occasional interaction with the public.*

R. 23–24 (emphasis added).

In making this determination, the ALJ specifically considered the opinions of the reviewing state agency psychologists. R. 29. Howard G. Atkins, Ph.D, conducted an initial review of Plaintiff's medical record for the state agency on August 22, 2016, R. 146–52, and opined, *inter alia*, that Plaintiff would have moderate difficulties in maintaining social functioning. R. 146. He specifically opined that Plaintiff was moderately limited in her abilities to interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 150. Under the heading, "MRFC – Additional Explanation[,]" Dr. Atkins explained his opinions: "Based on the overall evidence, clmt is capable of completing

simple, routine tasks in a setting without strict production quotas. *Clmt is capable of superficial and infrequent interaction with others in a routine work setting.*" R. 151 (emphasis added).

Luis Umpierre, Psy.D., reviewed Plaintiff's medical record upon reconsideration for the state agency on December 14, 2016. R. 162–69. Dr. Umpierre agreed with Dr. Atkins that, *inter alia*, Plaintiff had moderate difficulties in maintaining social functioning with moderate limitations in her abilities to interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 163, 166–67. He also affirmed Dr. Atkins' mental RFC, including the opinion that Plaintiff "*is capable of superficial and infrequent interaction with others in a routine work setting.*" R. 167–68 (emphasis added).

In crafting Plaintiff's RFC, the ALJ assigned "some weight" to the opinions of the state agency reviewing psychologists, explaining as follows:

> I have considered the opinions of the DDS reviewing consultants as to the claimant's psychological impairments (Exhibits 1A, 3A), and give them some weight, as these consultants have program knowledge, and reviewed available records; however, they did not have the benefit of the entire record, or an examination of the claimant, when making their determinations. *Overall, the assessment of moderate limitations due to the claimant's psychological impairments is consistent with the overall record.*

R. 29 (emphasis added).

Plaintiff contends that the ALJ's limitation to "occasional interaction" with coworkers, supervisors, and the public as well as the restriction that Plaintiff not "work in tandem with coworkers to complete job tasks" does not reflect that state agency psychologists' opinions that Plaintiff should be limited to "superficial and infrequent" interactions with others. *Plaintiff's Brief*, ECF No. 18, p. 30; *Plaintiff's Reply Brief*, ECF No. 24, pp. 7–8.  The Acting Commissioner disagrees, arguing that the ALJ properly incorporated in the RFC the limitation

that "Plaintiff should have only 'superficial and infrequent' interaction *with co-workers*." *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 21, p. 6 (emphasis added). "[B]y limiting Plaintiff's interactions to involve only non-tandem work and for only a portion of the workday, the ALJ accounted for the state agency's limitation to 'superficial' interaction within the plain meaning of the term." *Id.* at 6–7.

The Acting Commissioner's argument that the ALJ's restriction of no working in tandem with co-workers is tantamount to only superficial interaction is not well taken. Even if the Court were to accept the Commissioner's assertion—which is unsupported by any record evidence or case authority—her argument would nevertheless fail because the ALJ's RFC precluded working in tandem with only co-workers. R. 24. As a preliminary matter, the Acting Commissioner does not dispute that the ALJ apparently accepted the state agency reviewing psychologists' social limitations when finding that their "assessment of moderate limitations" flowing from Plaintiff's "psychological impairments is consistent with the overall record." R. 29; *see also* R. 23 (finding that Plaintiff had a moderate limitation in "interacting with others"). The state agency reviewing psychologists opined that Plaintiff was capable of only "superficial and infrequent interaction with *others*"; they did not distinguish between Plaintiff's limitations in her ability to interact with co-workers on the one hand, and her limitations in her ability to interact with supervisors and the public on the other hand. R. 151, 167. However, the ALJ inexplicably omitted a limitation of "superficial" interaction or its equivalent relating to supervisors and the public, *id.*, which the Acting Commissioner implicitly acknowledges. *See Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 21, p. 6 (arguing that the RFC properly incorporated the limitation that "Plaintiff should have only 'superficial and infrequent' interaction *with co-workers*" by limiting Plaintiff to no in tandem work with co-workers) (emphasis added). "The public, supervisors, and

11

co-workers are distinct groups, and are separately addressed on the mental RFC forms. Thus, limitations on one type of interaction in the RFC does not account for limitations on the others." *Grinolds v. Colvin*, No. 15-30, 2015 WL 5178184, at *2 (W.D. Pa. Sept. 4, 2015); *see also Michelle A. v. Saul*, No. 19-CV-00991-MJR, 2020 WL 7223235, at *5 (W.D.N.Y. Dec. 8, 2020) ("The public, supervisors, and co-workers are distinct groups, and are separately addressed on the [Commissioner's] mental residual capacity forms. Thus, limitations on two of these types of interactions does not account for limitations on the third.") (internal quotation marks and citations omitted). Notably, "an inability to appropriately interact with or respond to criticism from supervisors is distinct from an inability to interact with either coworkers or the public. Indeed, the Social Security regulations treat the abilities to respond appropriately to 'supervision' and to get along with 'coworkers" as separate aspects of the 'basic mental demands' of unskilled work, noting that the 'substantial loss of ability to meet' any basic mental demand could 'severely limit the potential occupational base.'" *Melissa R. v. Berryhill*, No. 2:17-CV-07716-AFM, 2018 WL 6507898, at *4 (C.D. Cal. Dec. 11, 2018) (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)); *see also Tschannen v. Colvin*, No. 15-182, 2015 WL 7012531, at *1–2 (W.D. Pa. Nov. 12, 2015) ("[I]t is unclear how the RFC accommodates Plaintiff's moderate social limitations assigned by Dr. Brace and Dr. Newman. Those limitations were, apparently, accepted by the ALJ, but the RFC includes limitations relating only to supervisors and the public. . . . While the ALJ is certainly entitled to exclude limitations from an RFC, he must explain why is doing so."). Accordingly, even if the Acting Commissioner is correct that the ALJ properly incorporated the state agency reviewing psychologists' restriction of superficial interaction with co-workers by restricting Plaintiff to no tandem work with co-workers, the administrative decision is nevertheless silent as to any limitation of superficial interaction with supervisors or

12

the public. R. 23–30.³ Moreover, the ALJ failed to explain this omission. *Id*. These omissions and oversights take on even greater significance when one considers that the vocational expert, upon whose testimony the ALJ relied, was asked to assume a claimant who is limited to "occasional" interaction with co-workers, supervisors, and the public but who is unable to work in tandem with co-workers. R. 30–31, 99–101.

Accordingly, considering this inconsistency and the ALJ's failure to explain this inconsistency, this Court cannot conclude that substantial evidence supports the ALJ's RFC determination. *See Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

---

³ The Acting Commissioner does not argue, nor can the Court conclude on this record, that a limitation of "occasional interaction" with supervisors and the public is equivalent to "superficial" interaction. Other courts considering this issue have determined that the term "occasional," which refers to the frequency of the interaction, is not the equivalent of the term "superficial," which refers to the quality of the interaction. *See Greene v. Saul*, No. 3:19-CV-00687-JD, 2020 WL 4593331, at *4 (N.D. Ind. Aug. 11, 2020) ("Logically, 'occasional' goes to the frequency of interaction. . . . '[S]uperficial' interactions describe the degree and the extent of interaction[.]") (citations omitted); *Danielson v. Comm'r of Soc. Sec.*, No. 3:18-CV-84, 2019 WL 1760071, at *4 (S.D. Ohio Apr. 22, 2019), *report and recommendation adopted*, No. 3:18-CV-84, 2019 WL 2011077 (S.D. Ohio May 7, 2019) ("However, occasional and superficial are not coterminous. Instead, '[o]ccasional contact' goes to the quantity of time spent with [ ] individuals, whereas 'superficial contact' goes to the quality of the interactions.") (internal quotation marks and citations omitted)); *Midlam v. Berryhill*, No. C17-5650, 2018 WL 2932134, at *2 (W.D. Wash. June 12, 2018) (finding, *inter alia*, that "[o]ccasional contact measures the frequency with which one comes into contact with another. It does not measure depth of contact, meaning whether the contact is superficial or not" and remanding action); *Oakley v. Colvin*, No. 15-CV-644, 2016 WL 4272136, at *9 (S.D. Ill. Aug. 15, 2016) ("Plaintiff argues that the limitation to occasional contact does not adequately capture Dr. Cesare's opinion that she should be limited to only superficial contact. The Court agrees. Occasional describes frequency of interaction, while superficial describes intensity or quality of interaction. They are not the same thing.").

This Court concludes that remand of the matter for further consideration is therefore appropriate even if, upon further examination of these issues, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of this issue.[4]

## V. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

---

[4] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff's RFC, the Court does not consider those claims.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**.

Date:  March 3, 2022                                       *s/Norah McCann King*
                                                             NORAH McCANN KING
                                                        UNITED STATES MAGISTRATE JUDGE